The Chancellor.
The bill is filed by the executors of John Annin, deceased, who was surviving executor of Jacob Vandoren, deceased, to ascertain and determine the true construction of certain bequests made by the said Jacob Vandoren to his daughter, Lenah Vandoren.
By the second clause of his will, the testator gave to his daughters, Lenah (by the name of Lane) and Mary, certain articles of household and kitchen furniture.
■ The residue of the proceeds of the sale of certain real estate, including all his rights and credits after the payment of all just debts and expenses, he gave unto his four daughters, Auley Logan, Elizabeth Annin, Lenah Vandoren, and Mary Vandoren, to them and their heirs, share and share alike, to be paid as soon as the estate could conveniently be settled.
The executors were directed to take charge of and lease the Compton farm during the life 'of the testator’s son John, and on his death they were ordered to sell the same. The proceeds of the sale he gave and devised to his four daughters and to the children of his son John, equally to them and their heirs.
By the 11th clause of his will, the testator directed as follows :
“Should my daughters Lenah and Mary, or either of *141 them, die leaving no legal issue, the share or shares herein Bequeathed to her or them, (if not paid over By my executors, and if paid over, then such part thereof as remains unexpended) I give and Bequeath unto my surviving children and their heirs equally Between them.”
The will was admitted to probate on the 21st September, 1811. Lenah, the daughter of the testator, died in the month of June, 1859, unmarried. A part of her share of the estate, which had been paid over to her by the executors, remained at the time of her death unexpended in the hands of her agent and attorney in fact, John M. WyckofF.
Answers have been filed by the administrator of Lenah, the legatee, by John M. WyckofF, her agent, and by the administrator of her deceased brother, John Van doren. All desire that the title to the fund should bo settled. The facts are not disputed.
It was conceded upon the argument, and I think properly, that the gift over of the shares of Lenah and Mary, upon their dying without issue, included only their proportionate share of the proceeds of the sales of the land and of the residue of the estate, and did not extend to the household furniture and chattels specifically bequeathed to them. The description of the gift, as “ the shares bequeathed,” and the expressions in the limitation over, applied to the gift, viz. “not paid over” and “paid over,” justify the limitation of the clause solely to the legatees’ shares of the money in exclusion of the chattels specifically bequeathed.
Is the limitation over valid, or did Lenah take the legacy absolutely ?
The limitation over is clearly upon a definite, and not an indefinite failure of issue. The gift over is to the testator’s surviving children. And it was within the contemplation of the testator that the money might be paid over by his executors as a part of his personal estate. The terms of the gift, therefore, are not such as to create an estate tail in real estate or an absolute gift of the personalty.
The only ground relied upon in support of the claim of an *142 absolute gift to Lenah is, that the terms of limitation over imply an absolute power of disposition by the legatee which is inconsistent with any less estate than the absolute ownership.
The original bequests are absolute. They give the property to the legatee without limitation or qualification. The gift over upon the death of the legatee without issue is not of the entire legacy, which would have qualified the original gift, and made it a gift for life, but it is of “ such part thereof as remains unexpended.”
In the case of the Attorney General v. Hall, decided in the Court of Chancery in 1731, the testator gave all his real and personal estate to his son and the heirs of his body and if. his son should die leaving no heirs of his body living, then the testator gave and bequeathed so much of his said real and personal estate as his said son should dispossessed of at his death to the Goldsmith’s Company of London, upon certain trusts. The devisee suffered a recovery of the real' estate to bar the entail, made a will of his personal estate, and died without issue. A bill was filed to have an account for the trusts in the will of so much of the real and personal estate of the testator as the son died possessed of. As to the real estate, it was held that the son took an estate tail, and that the claim of the plaintiffs, as to that, was barred by the common recovery. Upon the construction of the will; the court held that the limitation over was void, as the absolute ownership had been given to the son, for it is to him and the heirs of his body, and the company are to have no more than he shall have left unspent, and therefore he had power to dispose of the whole, which power was not expressly given to him, but it resulted from his interest.
• The court also held that the words which gave an estate tail in the lands must transfer the entire property of the personal estate, and then nothing remained to be given over; and upon both these grounds the bill was dismissed. Fitzgibbon 314.
*143 So far as regards the first point, the ease was nearly identical with the present.
In a note of a report of the same case in W. Kelynge 13, to be found in Coventry & Hughes' Dig. 616, the principle of the decision is stated thus: The limitation over of a chattel personal is void where the property is vested, and not the use only. The case in Fitzgibbon is cited with approbation by Lord Hardwicke in Flanders v. Clark, 1 Ves. sen. 10.
The authorities upon the point, sustaining generally the same principle in regard to devises of real estate as well as legacies, are numerous. It seems clearly settled that a right in the legatee or devisee to dispose of the estate given or devised at his pleasure, and not a mere power of specifying who may take, amounts to an absolute gift. Bull v. Kingston, 1 Mer. 314; Bowne v. Gibbs, 1 Russ. & Mylne 614; Jackson v. Coleman, 2 Johns. R. 391; Jackson v. Bull, 10 Johns. B. 18; Jackson v. Robins, 15 Johns. R. 169; S. C. in error, 16 Johns. R. 586; Jackson v. Delancey, 13 Johns, R. 537; Ide v. Ide, 5 Mass. 500; Burbank v. Whitney, 24 Pick. 146; Nelson v. Cooper, 4 Leigh 408; Barnard v. Bailey, 2 Harring. 56.
In Ramsdell v. Ramsdell, 21 Maine 292, Shepley, J., said, “ It has become the settled rule of law that if the devisee or legatee have the absolute right to dispose of the property at pleasure the devise over is inoperative.”
The same principle was admitted, both by the Supreme Court and Court of Appeals of this state, in the case of Armstrong v. Kent. The decision of the Supreme Court in that case was reversed, on the ground that the power of disposing by will was a power of appointment, and did not confer property, or involve the idea of property, in the first devisee. 1 Zab. 509; 2 Halst. Ch. R. 637 — 647.
The general principle is not controverted, but the case under consideration is sought to be distinguished from the reported cases, and to be taken out of the operation of the principle, on the ground that the gift over is not of such part of the legacy as remains' undisposed of, but of .such part *144 thereof as remains unexpended. The former expression, it was urged, involves an absolute power of disposition by sale or-gift, which the latter does not. Expenditure, it was said, does not mean given away, and the provision is merely equivalent to giving to the legatee the right of expending the interest and so much of the principal as might be necessary for her support, and disposing of the residue by the gift over, which would be clearly good. I was strongly disposed to adopt this suggestion, being willing to lay hold of any circumstance by which I might prevent the undoubted intention of this testator being defeated by a strict rule of law. ' But, on a careful examination of the cases, I do not see how the present case can be distinguished in principle from the adjudicated cases, or how this bequest can be sustained without a violation of the principle. The cases rest upon- the principle, that if the testator, either expressly or by implication, manifests an intent to vest in the first legatee the uncontrolled power of disposing of the property, such power involves the idea of absolute ownership, and the limitation over is void, as inconsistent with the rights of the first legatee. The uncontrolled power of expenditure necessarily implies absolute ownership as fully as the power of disposing of it. And this difficulty can only be overcome by limiting the right of expenditure to so much as may be necessary for the support of the legatee. But there is no such' limitation in the will. If the legatee had seen fit to expend the whole of the legacy in a style of living totally distinct from that to which she had been accustomed in her father’s house, there would have been no power in this court or elsewhere to prevent it. The unlimited power of expending the legacy involving the idea of absolute ownership as fully as the absolute power of disposing of it, a gift over of so much of the legacy as remains unexpended is tantamount to a gift of so much as remains, or so much as remains undisposed of. All the expressions involve the idea that the legatee should expend or dispose of the money as she sees fit, in other words, that she. has the right of absolute ownership.
*145 That probably was the idea of the testator. He gave to each of his married daughters her share of the property absolutely. To each of his unmarried daughters he gave her share in the same mode and by the same terms. He intended they should have the right to use, enjoy, and expend it as they saw fit. But so much as they should leave unexpended, in case they should have no children, he desired should go to the other children or descendants of the testator. He was not aware of the rule of law which prohibited his disposing of property, the absolute control of which he had already given to another.
The limitation over of the legacy, if not paid by his executors, would be clearly good if standing alone. But in connection with the other clause of the limitation, it cannot avail to change the construction or effect of the limitation over.
The executors of Jacob Van doren were justified in paying over the legacy to Lenah Vandoren without security. Such was the manifest intent of the testator. They would have been justified in so doing, even if the limitation over had been declared valid.
The bill was properly filed by the present complainants. The executors of the surviving executor are the executors of the will.
It was not necessary, however, that the bill should have been filed by the complainants-. It might with propriety have been filed by those claiming the estate under the limitation over.
Wherever the gift over is valid, equity treats the gift, direction, or recommendation as creating a trust in favor of those to whom the gift is made. And the cases in equity have frequently arisen upon bills filed by the cestui que trusts for the recovery of the property; and when the gift was of the property which remained at the death of the first devisee, the question whether the trust was created will be found to have been decided sometimes upon the ground that the prior disposition of the property imparted absolute ownership, and at others upon the ground that the property to *146 ■■which the trust was to attach was not certain or definite. Bull v. Kingston, 1 Mer. 314; Bowen v. Gibbs, 1 Russ. & Mylne 614; 2 Story’s Eq. Jur., § 1070; 2 Roper on Leg. 1431.
Answers are filed by the administrator of Lenah Vandoren, and also by a party claiming to be her executor, duly appointed by an instrument which is alleged to have been improvidently destroyed, and which the defendant asks to ■have established by this court as the last will and testament of- the said Lenah. That question cannot be determined in this -suit. Letters of administration upon the estate have been duly granted. The administrator is before the court. For the purposes of this suit, his title as administrator must be recognised. If the will is to be established, it must be by a bill duly exhibited for that purpose. Until that is done, the title of the party claiming to be executor cannot ■be admitted.
As to costs, the general rule is well settled, that where executors come into court to settle the true construction of ■the will, or for direction as to.their duty, they are entitled to costs out of the estate. And although the general rule is, that where a bill is dismissed no costs are allowed to the plaintiff, yet there are cases where he has his costs although he fails to recover. One case, as stated by Lord Langdale, is where the fund is administered by reason of the suit of the plaintiff, and the rights of all parties have been ascertained and determined, and the fund divided accordingly. Another is, where in fact the fund is not administered by the court, but where the court is of opinion that it is either necessary or proper, at the instance of some person, that a declaration should be made determining the rights of the -parties, and in that case the court makes a decree and saves ■the plaintiff his costs. Merlin v. Blagrave, 25 Beav. 136.
' “ The rule in the Court of Chancery is, that where the will raises a doubt, you make the estate pay the costs of the litigation.” Knight v. Boughton, 11 Clark & Fin. 555.
These costs would be a proper charge upon the estate of the complainants’ testator; and had the bill been filed either *147 by tlio executors or by the legatee while the estate remained in the hands of the executors, tlio costs would have been directed to be paid out of his estate. But that estate has long since been settled, and it is now sought to charge the costs upon tlio legacy itself or upon the estate of the legatee. The fund is not under the control of the court to be distributed or administered hero, but has been paid over to the legatee, to whose estate it rightfully belongs. Upon the stirring of the question it seemed to me a very proper case for the allowance of costs, and my strong inclination was to allow them, for the executors have manifestly acted in good faith and for the interest of all parties concerned. But I am unable to see any principle upon which the costs of the complainants can with any propriety be charged upon the estate of the legatee.
The bill must therefore be dismissed without costs to either party, as against the other.