HARRIET McCLOSKEY, substituted administratrix, respondent,

*v.*

JONAS J. THORPE, administrator, et al., appellants.

[Argued March 11th, 1908.   Decided June 15th, 1908.]

A testator, by his will, provided as follows: "Third.   I own one third of the saw mill, under the firm of S. L. Shimer & Co., it is my will and I do order the one third sold, within one year after my decease to the best advantage, and the money *paid over* to my wife Charity *for her use,* and I also will her all my Personal Property, that I am possessed of, and *if there should be anything left,* after her death, then I want that *divided* also with the money from the House and Lot."—*Held,* that the widow took an absolute estate in the proceeds of sale and in the personal property.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bergen, whose opinion is reported in *73 N. J. Eq. (3 Buch.) 200.*

*Mr. Osiris D. McConnell,* for the complainant, respondent.

*Messrs. Smith & Brady,* for the defendants, appellants.

The opinion of the court was delivered by

SWAYZE, J.

John Rooks died in October, 1870.   By his will, after directing that his debts and funeral expenses be paid, he provided as follows:

"Second.   I give and bequeath unto wife Charity the House and Lot of Land with its Out-Buildings in which I now live, *as long as she lives, for her own benefit,* and after her death to be sold and divide the money between Harriet Eicke, and John Zellers, (both children that I have raised,) when they come of age, Harriet two thirds and John one.

"Third. I own one third of the saw mill, under the firm of S. L. Shimer & Co.. it is my will and I do order the one third sold, within one year after my decease to the best advantage, and the money *paid over* to my wife Charity *for her use*, and I also will her all my Personal Property, that I am possessed of, and *if there should be anything left*, after her death, then I want that *divided* also with the money from the House and Lot Provided, however, if either Harriet Eicke or John Zellers should die before my wife. both die, Then I will that the money so left to them shall be given to the Trustees of Grace Lutheran Church of Phillipsburg to be appropriated for its benefit. I want S. L. Shimer with my wife to sell the saw mill property and make a deed for the same or his executor. I will and order that my sister Fannie Mundy have Four Hundred Dollars, Taken off of the two Harriet & John's shares after my wife death and in case the boy, John Zellers dont turn out to be a sober honest upright man he can have no legacy in this will. Dated October first eighteen hundred and seventy."

His widow, Charity, took out letters of administration with the will annexed, and with S. L. Shimer sold Rooks's one-third interest in the saw-mill. Charity took possession of the testator's personal property and received the proceeds of sale of his interest in the saw-mill, amounting in all to $5,000. She died intestate in 1904 and Jonas J. Thorpe, one of the defendants, was appointed administrator of her estate. Her personal property was appraised at a little less than $3,000, all of which had been derived from the estate of her husband. This property is claimed by the complainant as property of the estate of John Rooks. The vice-chancellor so held, and decreed that the complainant was entitled to an accounting. The question at issue is whether Charity took an absolute estate or only a life estate in the proceeds of the saw-mill and the personal property.

The principle underlying the case is thus stated by Chancellor Green in *Annin's Executors* v. *Van Doren's Administrator,* 14 *N. J. Eq.* (*1 McCart.*) *135* (at *p. 146*) : "The cases rest upon the principle that if the testator, either expressly or by implication, manifests an intent to vest in the first legatee the uncontrolled power of disposing of the property, such power involves the idea of absolute ownership, and the limitation over is void, as inconsistent with the rights of the first legatee. The uncontrolled power of expenditure necessarily implies absolute ownership as fully as the power of disposing of it. And this difficulty can only be overcome by limiting the right of expendi-

ture to so much as may be necessary for the support of the lega-
tee." In that case he found no such limitation in the will which
contained a bequest over of such part as remained unexpended.

In *Downey* v. *Borden, 36 N.·J. Law (7 Vr.) 460,* where there
was an express power of disposition of one-third of the estate, the
first taker was held to have a fee.

A similar result was reached by Chancellor McGill in *Roden-
fels* v. *Schumann, 45 N. J. Eq. (18 Stew.) 383,* although Chan-
cellor Runyon held differently upon the same will, and by this
court in *Tuerk* v. *Schueler, 71 N. J. Law (42 Vr.) 331.*

In *Wilson* v. *Wilson, 46 N. J. Eq, (1 Dick.) 321,* the bequest
over was of the remainder of the estate "whatever it may be at
the decease of my said daughter." Chancellor McGill held that
these words did not necessarily imply a power of disposition or
absolute dominion, because the testator in bequeathing over
"whatever it may be at the decease of my said daughter" may
have had in mind not the fact that the daughter might expend
the bequest, but rather changes wrought by investment, for he
said it is as likely that the testator contemplated a change in the
character or nature of the residue as he did a change in the
amount, and if he contemplated a change in amount it might have
been by increase as well as by decrease, or if by decrease, such
decrease as might possibly be brought about by accident.

The cases were reviewed by Vice-Chancellor Pitney with his
usual thoroughness and acumen in *Tooker* v. *Tooker, 71 N. J.
Eq. (1 Buch.) 513.*

An examination of these cases demonstrates that if the lan-
guage of the will is such as necessarily to imply an absolute
power of disposition, the estate is absolute in the first taker, and
such power of disposition is to be implied from an untrammeled
power to expend the legacy.

In the present case the testator by clause 3 of the will di-
rected absolutely a sale of the real estate, and then directed that
the money be paid over to his widow for her use, and followed
this by an absolute gift of the personal property. The language
used in this blended gift of proceeds of sale of realty and of per-
sonalty was the language of an absolute gift. If this absolute
estate is to be restricted to a life estate, such restriction should

be apparent in the rest of the will. An examination of the will shows that the testator did not contemplate that anything would necessarily be left. His language is not as in some of the cases cited "what remains," but "if there should be anything left." The conditional form indicates that nothing might be left. By the second clause he was careful to give the widow a life estate only in the dwelling-house. He had in mind, therefore, the difference between a life estate and a fee; that he had the distinction in mind when the third clause was drafted must be inferred from the direction that if there should be anything left after her death it was to be divided with the money from the house and lot.

The mill was to be sold not by the widow alone but by the widow and Shimer. If he had intended that his wife should have only the income of the proceeds, the natural thing would have been to leave the money in Shimer's hands with directions to invest and pay over the income. Instead of doing so, he directs that the money be paid over to his wife for her use. The last words are significant. If they are meant in the technical legal sense of "use," the gift amounts to a gift of the property itself. If they are meant in the popular sense of the words, they may quite as readily be held to mean that she might use it up as that she should have only the usufruct; the former meaning is indicated clearly when he immediately thereafter intimates the doubt whether anything would be left.

The learned vice-chancellor thought that the words "if there should be anything left after her death," were used as applicable to the personal property which consisted in great part of consumable goods. There is some force in this view, but the conclusion to which it leads is adverse to the respondent. If the words apply only to the personal property with which they are in immediate collocation, there is nothing to indicate an intention on the part of the testator to limit the absolute estate in the proceeds of sale of the mill property which arises out of the previous language of the will.

We are satisfied that the testator intended that his wife should expend the proceeds of sale if she wished. To do this she must have an absolute power of disposition, and the case is within the

principle relied on by Chancellor Green in *Annin's Executor* v. *Van Doren's Administrator*.

The decree is reversed, with costs.

*For affirmance*—REED—1.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—14.