Jane S. Huffman died in January, 1906, testate. Her will was duly probated in the surrogate's office of Cape May county, and her husband, John B. Huffman, qualified as executor.
Clauses six, seven and eight of said will read as follows:
"Sixth. I do also give, will and bequeath and devise unto John B. Huffman aforesaid in case he shall survive me, all the residue of my property real and personal of every kind and description to him to have and to hold the same during his natural life and then I do will and bequeath Eleven Hundred Dollars thereof to the Baptist Church of Cape May Court House, New Jersey, incorporated as the First Baptist Church of Cape May; and I do bequeath and direct that six hundred ($600) Dollars of the said eleven hundred dollars shall be put out at interest on first Bond and Mortgage on land worth double *Page 250 
that amount by the Trustees of said church in the name of the said church and that the interest thereof be used exclusively to put and keep in good order and repairs and to continue to put and keep in order and repair the cemetery lot and every thing therein and the fence around the same where my dear son Newton Swain is buried and where I have directed in this will I shall be buried; I direct that said lot and all things therein shall be kept in as nice order in every respect as the whole of the interest of the said Six Hundred Dollars will keep the same and the other Five Hundred dollars of the said Eleven Hundred Dollars, I do will, bequeath and direct shall be put out at interest in the name of the said Church on first Bond and Mortgage on land worth double that amount and the interest used exclusively to assist in paying the salary of the Pastor of the said Church; the said Five Hundred Dollars of the said Eleven Hundred Dollars, being given in consideration of my confidence in the said Church through their Trustees to attend to and look after the said Cemetery lot aforesaid as directed in this will after I and my said husband are both dead; this eleven hundred dollars is subject to the right of my husband to have and to hold the same during his natural life as before stated.
"Seventh. I do also give, will and bequeath unto John B. Huffman my beloved husband in case he shall survive me in addition to what I have willed to him, his heirs and assigns forever absolutely, and in addition to what I have willed to him during his natural life the right and power to sell and convey and assign and use for whatever he choses any part or all of my real estate and personal property including the principal of Bonds and Mortgages, notes and other obligations bank stock or shares, Railroad stock or shares and land and houses and buildings and any other property real and personal whatever as in his judgment may be necessary for his comfort, convenience and pleasure and happiness except the Six Hundred Dollars of the Eleven Hundred Dollars willed to the Church aforesaid. the interest of which is to be used exclusively to keep in order the Cemetery lot aforesaid after my husband's death. And as to the said Six Hundred Dollars he is to have the same his natural life and I do give, will, bequeath and devise and direct that the said John B. Huffman shall have the full and unlimited right and power to do so according to his own judgment and choice in every way except only by his last will and testament, without any restraint or control dictation or direction from any person or persons Court or Courts, and in order to carry out this part of my will he may sell and convey any part or all my real estate by public or private sale and make a good title for the same to the purchaser or purchasers and the said purchaser or purchasers shall not be held in any liable for the application of the purchase money; he the said John B. Huffman may mortgage any part or all of my real estate and assign any bonds and mortgages sell any bank stock or shares, railroad stock or shares and make a good title to the person or persons to whom he sells or assigns the same, the object of this section of my will is that my said husband shall be made and be as comfortable and happy all his life as my property can cause him to be even though it may take all my *Page 251 
property real and personal to accomplish this end except the Six Hundred Dollars of the Eleven Hundred Dollars willed to the church aforesaid, the interest of which is to be used exclusively to keep the Cemetery lot aforesaid in order after my husband's death.
"Eighth. I do will and bequeath that on the death of my said husband that whatever my remain of my property not including anything for rents interest, dividends or anything of that kind whatever, those being willed to my said husband absolutely and not including any which he may sell, convey, assign or mortgage or in any way be disposed of by virtue of the seventh section of this will, shall be sold and after the church aforesaid has been first paid the said Six Hundred Dollars to be put out at interest to be used exclusively to keep the cemetery lot in order as hereinbefore directed the said church shall then be paid the said Five Hundred Dollars before mentioned and Violet Armour if she shall survive us shall be paid the sum of Eight Hundred Dollars which payment shall be in the order aforesaid then the balance whatever it may be shall be equally divided in four equal shares and go as follows, one fourth part to my niece, Eliza Cresse and to her heirs and assigns forever, and in case she survives me, and if not then to my sister Rubamah W. Cresse and to her heirs and assigns forever; and one fourth part thereof to my niece, Leonora Bennett, and to her and to her heirs and assigns forever in case she survives me; and one fourth part thereof to my nephew Frederick W. Bennett and to his heirs and assigns forever in case he survives me; and one fourth part to my nephew Coleman F. Leaming and to his heirs and assigns forever in case he survives me; and in case any one or more of them that is mentioned above shall not be living at the death of my husband, John B. Huffman, then to those that are living share and share alike."
John B. Huffman died on November 18th, 1923, testate. His widow (he having remarried), Sarah Ann Huffman and Harry S. Douglass, qualified as executrix and executor.
At the time of the death of said John B. Huffman, he had in his possession the securities named in the bill of complaint. These securities constituted the residue of the securities, which had come into his possession as executor of the estate of Jane S. Huffman, he having sold others, and were, after his death, found among his personal papers, tied in one bundle with some of the envelopes endorsed in the name of Jane S. Huffman.
Huffman, in March, 1915, filed in the said surrogate's office what he termed a "first account of the estate of Jane S. Huffman," in which he charged himself with the securities in question and the income rising therefrom, crediting *Page 252 
himself as executor, with the interest and dividends paid to himself as legatee.
He also attached a list of the assets of the estate of Jane S. Huffman remaining in his hands. This list included the securities set forth in the bill of complaint, together with the few small mortgages which were afterwards paid and canceled of record. I have not found it necessary to consider as evidence the testimony of Huffman's statements as to his interests in his wife's estate.
The bill is filed praying that a decree may be entered to the effect "that the said John B. Huffman under the said will did not become the absolute owner of the residue of his wife's estate, but that he took therein only a life interest with a power of disposal; and further, that said John B. Huffman did not exercise said power of disposal at any time during his lifetime, and did not convert to his own use by sale, conveyance, transfer or other means said property, and that complainants Coleman F. Leaming, Eliza C. Peirce, Leonora Bennett Howard are the owners of and now entitled to receive from the said defendants Sarah Ann Huffman and Harry S. Douglass, executors of John B. Huffman, deceased, all of said property hereinabove enumerated, and any other property forming a part of the residue of the estate of Jane S. Huffman, deceased, with the exception of the sum of $1,100, mentioned in the eighth clause of said will, and the sum of $800, bequeathed to Violet Armour, if the said Violet Armour survived the said John B. Huffman."
It is undisputed that Huffman, with the exception of the collection of the few small mortgages above referred to, never attempted to exercise the power of disposal given him by his wife's will.
All endorsements showing payment of interest made by him upon the securities were signed as executor. He also endorsed upon the note made by him to his wife the payments of interest as they became due, signing them also as executor. In the case of the change in capital stock of the First National State Bank of Camden, he received and accepted the new certificate in the name of the estate of Jane S. Huffman. *Page 253 
This practice of signing as executor continued until he became unable to attend to his affairs personally, and thereafter the receipts were signed by his wife without the use of the title "executor."
The power to dispose was as expressed in clause seven above quoted.
It is evident that John B. Huffman did not exercise the right and power to dispose of these securities, and that it was not necessary so to do for his "comfort, convenience and pleasure and happiness" is clearly shown by the inventory filed in his estate. This inventory, in addition to the items in issue, amounting to $19,715.75, shows a personal estate of over $50,000.
The statement of facts recited by Vice-Chancellor Foster, as quoted by the court of errors and appeals in McDermott v.Zimmerman, 89 N.J. Eq. 215, are strikingly similar to the facts in the present case, and that case is dispositive of the question now under consideration.
I, therefore, find that Huffman did not exercise the power of disposal of the stocks, securities and mortgages set forth and described in the complainants' bill (being a portion of the property given him by the will of the said Jane S. Huffman), and that Huffman's estate in them was not absolute, but was limited to his life, and should now be distributed in accordance with the terms of her will.
A decree will be advised that the said stocks, securities and mortgages be delivered to the executor of the estate of Jane S. Huffman, to be by him properly distributed and accounted for.
My attention has been called to the opinion of Mr. Justice Swayze in McCloskey v. Thorpe, 74 N.J. Eq. 413, in which he states:
"The principle underlying the case is thus stated by Chancellor Green in Annin's Executors v. Van Doren's Administrator,14 N.J. Eq. 135: `The cases rest upon the principle that if the testator, either expressly or by implication, manifests an intent to vest in the first legatee the uncontrolled power of disposing of the property, such power involves the *Page 254 
idea of absolute ownership, and the limitation over is void, as inconsistent with the rights of the first legatee. The uncontrolled power of expenditure necessarily implies absolute ownership as fully as the power of disposing of it. And this difficulty can only be overcome by limiting the right of expenditure to so much as may be necessary for the support of the legatee.'" In the present case the limitation is specific.