**GOLDSTONE et al. v. UNITED STATES.**

No. 358.

Circuit Court of Appeals, Second Circuit.

Aug. 11, 1944.

Bondy & Schloss, of New York City (Eugene L. Bondy, of New York City, of counsel), for appellants.

James B. M. McNally, U. S. Atty., of New York City (Marvin M. Notkins, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

The question presented by this appeal is whether the proceeds of two contracts, which matured upon the death of Morris L. Goldstone and were payable to his widow, were properly included as part of his gross estate under the provisions of section 302(c) of the Revenue Act of 1926, at

374

amended, Int.Rev.Code, § 811(c), 26 U.S.C.A. Int.Rev.Code, § 811(c).

The facts are not in dispute. The decedent died testate on February 23, 1938. Nearly five years before, in June 1933, he had caused The Equitable Life Assurance Society of the United States to issue two contracts for which he paid sums aggregating $26,500. One contract insured his life in the sum of $18,928 payable upon his death to his wife Beatrice, or, in case of her prior death, to his two daughters, or, if none of the named beneficiaries survived him, to his executors or administrators. The consideration for the issuance of this policy was a single premium of $14,357.08 paid by check of the decedent. This policy was issued without a physical examination of the "insured", who was then 63 years of age. In lieu of a physical examination he was required to purchase the second contract. This was an annuity contract. It provided for the semi-annual payment of $386.51 to the "annuitant", who was the decedent, during his life, and for the payment upon his death of $6,071.46 to his wife Beatrice, or, if she were not living, to his two daughters, or, if they also were dead, to his executors or administrators. The consideration for the annuity contract was a single premium payment of $12,142.92 made by the decedent. By the terms of each contract the wife had the power to assign it, to borrow money on it, to receive dividends, to change the beneficiaries, and to surrender the contract and obtain the surrender value thereof. If she should die before the "insured" or "annuitant", these powers passed to him. She survived her husband and had not alienated or surrendered either contract. Under the contracts she was entitled to receive as beneficiary from Equitable Life Assurance Society the annuity death benefit of $6,071.46, the face value of the life policy, $18,928, and accumulated dividends of $182.24, a total of $25,181.70.

Upon the foregoing facts the Commissioner of Internal Revenue determined that the sums payable to the decedent's widow pursuant to the two contracts were includable in his estate for purposes of the estate tax. This increased by $5,376.11 a deficiency assessment which the executors paid. A claim for refund thereof having been rejected they brought the present suit and have appealed from an adverse judgment.

■ It is conceded that the two contracts must be considered together and, so considered, they imposed no insurance risk upon the promisor; hence section 302(g) of the Revenue Act of 1926, Int.Rev.Code, § 811(g), 26 U.S.C.A. Int.Rev.Code, § 811 (g), relating to amounts receivable "as insurance under policies taken out by the decedent upon his own life" is inapplicable. Helvering v. Le Gierse, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996. Both parties agree that the question is whether the proceeds of the contracts are taxable against the decedent's estate under section 302(c), Int. Rev.Code, § 811(c), 26 U.S.C.A. Int.Rev. Code, § 811(c), the material portions of which are printed in the margin.*

■ The district court answered the question in the affirmative upon the authority of Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604. That case, following Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996, held that trusts wherein the settlor retained a contingent reversionary interest terminating with his death should be included in the settlor's estate for taxation under § 302 (c) because they were transfers "intended to take effect in possession or enjoyment at or after his death." In Chase National Bank v. United States, 2 Cir., 116 F.2d 625, we applied the Hallock case to insurance proceeds where the insured had retained a possibility of reverter in the event of his beneficiary's predeceasing him, hold-

---

* "Sec. 811. Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *

(c) Transfers in contemplation of, or taking effect at death. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * * intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, un-

der which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * * *"

ing that when the death of the insured terminates rights of his estate to receive payment under the policy and fixes them unalterably in the beneficiary, the proceeds must be added to the insured's estate for taxation under § 302(g). A few months later the opinion in Helvering v. Le Gierse, supra, decided that the proceeds of a life policy issued under circumstances similar in general to those in the case at bar, were taxable against the decedent's estate as a transfer under § 302(c), and not as insurance under § 302(g). These authorities, read together, appear to control the case at bar. See also Commissioner v. Washer, 6 Cir., 127 F.2d 446, certiorari denied 317 U.S. 653, 63 S.Ct. 49, 87 L.Ed. 525; Mearkle's Estate v. Commissioner, 3 Cir., 129 F.2d 386; Commissioner v. Clise, 9 Cir., 122 F.2d 998, certiorari denied 315 U.S. 821, 62 S.Ct. 914, 86 L.Ed. 1218.

 The appellants urge, however, that the extensive powers conferred upon the wife by the contracts here under consideration distinguish their case from those above cited and compel an opposite result. It is true that none of the beneficiaries there had powers like those conferred upon the wife here. By surrendering the annuity contract at any time she could have gotten the same sum as though the annuitant had died; and by surrendering the life policy she could have obtained its surrender value, which at the instant before the insured's death was only $5,072.71 less than the amount payable to her upon his death. It is argued that the wife should be regarded as unconditional owner of the contracts, or at least of so much of the proceeds as she might have drawn at will under them. But the argument does not convince us. The law of taxation, as set forth in the cases above cited, looks to the unrealized possibility of reverter and concludes that where a possibility of reverter remains, the transfer takes effect only upon death. The husband's death terminated all his rights and enlarged those of his wife. No part of the proceeds which the wife received came to her through the exercise of her powers under the contracts. At the moment of her husband's death the powers expired and became a nullity. Cf. Johnson v. Snyder, 82 Ind.App. 215, 142 N.E. 877; Leaming v. Huffman, 96 N.J.Eq. 249, 124 A. 704; Supreme Colony United Order of Pilgrim Fathers v. Towne, 87 Conn. 644, 89 A. 264, Ann.Cas.1916B, 181. His death was the operative fact which matured the promisor's duty to pay "and became the 'generating source' of important and definite accessions to the property rights" of the wife. See Tyler v. United States, 281 U.S. 497, 504, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758. If the powers are significant for any purpose, they merely add to the remoteness of the contingency upon which the Hallock doctrine depends. We agree with the Sixth Circuit that it is idle to differentiate the Hallock case on such ground because the Supreme Court "was in search of a guiding principle depending not upon illusive and subtle distinctions, but one which should be uniform and workable in the application of the estate tax." Commissioner v. Washer, supra, 127 F.2d at page 449.

The judgment is affirmed.