**ESTATE of Lester FIELD, Deceased.**
**Barnett HOLLANDER, Temporary Administrator and Executor, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
July 18, 1956.

Sydney J. Schwartz, New York City, for plaintiff.

Paul W. Williams, U. S. Atty. for the Southern Dist. of N. Y., New York City, for the United States, Robert J. Ward, Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

This is an action to recover estate taxes previously paid. There are before me motions by both parties for summary judgment.

The decedent, Lester Field, executed a trust indenture on June 8, 1922. He died on November 16, 1937. He received the income from the trust during his lifetime. After his death his widow received the sum of $150,000 under the terms of the trust. It is conceded that, under section 302(c) of the Revenue Act of 1926, 44 Stat. 70, that sum was part of his taxable estate because of a provision in the trust instrument which allowed him during his lifetime to reduce or cancel the gift. The controversy involves the taxability of the rest of the trust fund which was valued on his death at $157,452.82. The taxability of this

amount is contested but it has been taxed and the tax has been paid. The action is to recover the tax on that amount.

Not only the question of taxability is presented but also the question whether recovery is not barred by one of several statutes of limitation. The motions before me deal with both these points, although the questions of the statute of limitations have been decided by Judge Murphy in favor of the estate in Field Estate v. United States, D.C., 131 F. Supp. 76. The Government invokes the rule of Dictograph Products Company v. Sonotone Corporation, 2 Cir., 230 F. 2d 131, and asks me to pass upon the questions of the statute of limitations despite Judge Murphy's decision. Even if I were disposed to encourage successive submissions of the same questions to several judges by reexamining these matters passed upon by my brother I would find it unnecessary since, on the merits, I find that there is no right to recover.

The provision of the trust instrument which seems to me to render taxable the interest in question is one which gives the donor the power during his lifetime to reduce or cancel the interests of his issue who were made the primary trust beneficiaries. As above stated, it is conceded that the reservation of a similar power in the case of the decedent's widow who survived him rendered taxable the interest destined for her. Plaintiff urges, however, that, since the donor lived and died without issue, the power to reduce or cancel the interests destined for them "never came into effect" and thus did not affect the taxability of the subject of the gift. The soundness of this position is the question before me.

The question is treated by Mr. Justice Douglas in a concurring opinion in Commissioner of Internal Revenue v. Estate of Field, 324 U.S. 113, 65 S.Ct. 511, 89 L.Ed. 786, where the Supreme Court held the interests taxable because of a possibility of reverter to the donor under the terms of the trust instrument. Mr. Justice Douglas, in his concurring opinion, distinguished May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, on the ground that the case before him differed not only on account of the possibility of reverter but also because, 324 U.S. at page 117, 65 S.Ct. at page 512, "in this case the grantor retained the right to reduce or cancel by will or written instrument the interests of the children".

Mention of this decision of the United States Supreme Court holding taxable the interest here involved brings me to the explanation of this subsequent suit for recovery of the tax brought on the ground that the interest is not taxable. This suit is based upon section 607 of the Revenue Act of 1951, enacted after the Supreme Court decision in this case, which provides:

"Transfers Conditioned Upon Survivorship.

"In the case of property transferred by a decedent dying after March 18, 1937, and before February 11, 1939, the determination of whether such property is to be included in his gross estate under section 302(c) of the Revenue Act of 1926 (44 Stat. 70) as a transfer intended to take effect in possession or enjoyment at or after his death shall be made in conformity with Treasury Regulations in force at the time of his death."

The Supreme Court decision in this case to the effect that the interest is taxable because of the existence of a possibility of reverter was not in harmony with the Treasury Regulations existing at the time of the decedent's death and the purpose of the subsequently enacted section 607 was to give to estates of decedents dying, as he did, between March 18, 1937 and February 11, 1939, the benefit of those Treasury Regulations, despite the effect of the later adopted contrary doctrine of the United States Supreme Court. In view of the determination which I have reached that the estate is taxable even under the Treasury Regulations in force at the time of the decedent's death, I need not consider the question whether this remedial section

607 would permit the recovery of taxes the propriety of the assessment of which had been adjudged by a decision of the United States Supreme Court still in full force and effect.

The consideration of the point raised by Mr. Justice Douglas requires study of the terms of the trust instrument. These terms are excellently summarized in the opinion of the Tax Court in the original litigation, Estate of Field, 2 T.C. 21, 22, and I can do no better than to restate the terms here as they were stated there:

A. The trust is to continue for the joint lives of two nieces and the life of the survivor of them unless terminated earlier under F, infra.

B. The income is to be paid to decedent for his life unless the trust terminates before his death.

C. Upon the death of decedent prior to the termination of the trust leaving issue or a widow, $150,000 is to be placed in trust for the widow and the balance, or, if he left no widow, all, is to be held in trust for his children, the issue of any deceased child to take the share of such deceased child. Separate, equal trusts are to be set up for each.

D. The aforesaid trusts are subject to decedent's right to reduce or cancel the amounts of the gifts by will or instrument in writing and the amounts by which any gifts are reduced or canceled are to be added to the gifts for the issue which are not reduced (no restoration being permitted of any gift reduced).

E. If the decedent cancels all of the gifts or reduces gifts so that there remains a balance undisposed of, then all of the balance undisposed of is to go to his brother or sister surviving or their issue.

F. During the continuance of the trusts the income is to be paid to the beneficiary named and upon the death of the beneficiary during the continuance of the trust the corpus is to be paid to the beneficiary's issue surviving, if none, then to decedent's brother or sister or their issue.

G. Upon the death of the widow, the corpus of the trust created for her benefit is to go to the issue of decedent surviving, but if none, then to the brother or sister or their issue.

H. Upon termination of the trust before the death of the decedent the corpus is to be paid over to decedent.

I. Upon termination of the trust after the death of decedent but during the existence of any trust the corpus is to be paid to the life beneficiary.

As above stated, decedent lived and died without issue. He was 52 years old at the time of his death. He was survived by his widow, by his two nieces, whose lives were to measure the maximum life of the trust, by his sister, Ruth Rosenfield Hollander, and by John R. Field and Warren R. Field, issue of a deceased brother, Hugo Rosenfield.

It is evident that, once the decedent had delivered the trust instrument, his interest in the property consisted of (1) his right to the income for life or until the earlier termination of the trust by deaths of the two whose lives measured it; (2) his right to reduce or cancel by will or instrument the amounts of the gifts to the widow and his issue; (3) his right to receive the corpus upon termination of the trust before his death.

It was this third interest which was held by the Supreme Court to render the gift taxable. Plaintiff contends that the remedial section 607, in making applicable to this estate the regulations existing at the time of decedent's death, has reversed the holding of the Supreme Court with respect to the effect of this reservation of reversionary interest. That I need not consider in view of my determination that the interest is taxable on the ground stated by Mr. Justice Douglas, i. e., the reservation of the right to reduce or cancel the gifts to children.

The basic statute with which we have here to deal is embodied in section 302 (c) and (d) of the Revenue Act of 1926, 44 Stat. 70, as amended 48 Stat. 754, 49 Stat. 1744. The relevant portions of that section are as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * *

"(d) (1) To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone * * * to alter, amend, revoke, or terminate * * *."

The regulations in effect on the date of the death of the decedent which, as it will be recalled, are made by the remedial section 607 applicable to the determination of the tax on the estate of a decedent dying at the time of the death of the donor here, so far as important here, are contained in the following extracts from Articles 19 and 20 of Regulations 80 (1937 ed.):

"*Art. 19. (a) Transfers included.* The statutory phrase, 'a transfer * * * intended to take effect in possession or enjoyment at or after his death', includes a transfer, by trust or otherwise, in connection with which the decedent reserved or retained * * * the right during his life * * * to designate the person or persons who should possess or enjoy the transferred property * * *."

"*Art. 20. (a) Transfers included.* Subdivision (d) of section 302 of the Revenue Act of 1926, as amended, embraces a transfer by trust or otherwise * * * when at the time of decedent's death the enjoyment of the transferred property, or

some part thereof or interest therein, was subject to any change through a power exercisable * * * by the decedent * * * to alter, or amend, or revoke, or terminate.

"* * *.

"(b) * * *

"(3) * * *

"The power to alter, amend, revoke, or terminate will be considered to have existed on the date of the decedent's death, though the exercise of the power was subject to a precedent giving of notice, or though the alteration, amendment, revocation, or termination would take effect only on the expiration of a stated period after the exercise of the power, whether or not on or before the date of the decedent's death notice had been given or the power had been exercised, or *though the exercise of the power was restricted to a particular time or the happening of a particular event which had not arrived or occurred at decedent's death.*" (Emphasis added.)

It has been noted that the above quoted statute in substance makes a decedent's estate taxable to the extent of any interest therein "where the enjoyment thereof was subject at the date of [decedent's] death to any change through the exercise of a power * * * by the decedent alone * * * to alter, amend, revoke or terminate".

It has also been noted that under the regulations in force at the time of the decedent's death "the power to alter, amend, revoke, or terminate will be considered to have existed at the date of the decedent's death * * * though the exercise of the power was restricted to a particular time or the happening of a particular event which had not arrived or occurred at decedent's death."

■■ The decedent, by the trust instrument here involved, directed that that part of the corpus of the trust with which we are here concerned should be held upon his death in trust in separate

funds for each beneficiary. The income from these funds was to be paid to the respective beneficiaries during their lives and upon the death of a beneficiary during the continuance of the trust the corpus was to be paid to the beneficiary's issue surviving or, in default of issue of the beneficiary, to the issue of the decedent surviving or, in default of the issue of the decedent, then to decedent's brother or sister or their issue. Since the decedent never had issue, the persons presumptively entitled during all of his lifetime to the fund with which we are concerned were his brother or sister or their issue under the familiar doctrine of the acceleration of the remainder where an intermediate estate does not come into being. Jull v. Jacobs, L.R. 3 Ch.D. 703, 709. Thus, though the donor, according to the letter of the trust instrument, had the power to alter or revoke the interests of his children, the exercise of that power was ineffective unless and until the birth of issue. That might be thought to sterilize it as a generating source of taxation but it fell precisely into the words of Article 20(b) (3) of the Regulations which provided that a power would be considered to have existed on the date of a decedent's death although its exercise "was restricted to a particular time or the happening of a particular event which had not arrived or occurred at decedent's death".

█ The question of the original validity of Article 20(b) (3) of the Regulations is not presented. Except for the passage of the remedial section 607, the interest here involved would be part of decedent's taxable estate under the decision of the United States Supreme Court in this very matter. By the re- medial section 607 Congress gave another chance to the representatives of estates of decedents who died at the time of the death of this decedent and said that their rights should be determined under the regulations in force at the times of the deaths of the decedents. This was a matter of grace and might be extended on any condition which seemed proper to Congress. Whether or not the regulation was a valid interpretation of the law which existed at the time that the regulation was adopted is of no moment when Congress adopts it as a measure of the rights which Congress is bestowing gratuitously upon taxpayers.

There is, however, a possibility that the remedial section 607, in spite of its all embracing terms, might be held to have validated only certain provisions of the Treasury Regulations in force at the date of the decedent's death and that Article 20(b) (3) is not among those validated. The argument for such a possibility is based on the incontestable fact that the primary purpose of Congress in adopting the remedial section 607 was to give relief to the estates of those decedents who had relied on Article 17 of the same Treasury Regulations which stated in substance that the existence of a possibility of reverter did not render the interest taxable.* This primary intention is clearly evidenced by the Senate Finance Committee Report, Sen.Rep.No.781, pt. 2, 82d Cong., 1st Sess. 108, and the Conference Committee Report, H.Rep.No. 1213, 82d Cong., 1st Sess. 36–37. Moreover the dates chosen for the beginning and end of the period within which decedents must have died to have their estates entitled to the relief afforded by

---

* Such an interest was held to be non-taxable in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, decided in 1935. The Treasury Department thereupon, on March 18, 1937, amended Article 17 of Regulations 80 (1937 ed.) to conform the regulations to the Supreme Court ruling that possibilities of reverter were not taxable. T.D. 4729. Presumably after the passage of the Revenue Act of 1939, on February 11, 1939, the Treasury Department abandoned this position and in 1940 succeeded in getting the St. Louis case overruled in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604. The Hallock case held that reversionary interests and possibilities of reverter would be treated alike, both taxable. Since that date, the Treasury Regulations prescribe that both reversionary interests and possibilities of reverter are taxable. See § 81.17 of Treasury Regulations 105 (1939 ed.).

**526**

section 607 were fixed with reference to developments in connection with the taxability of estates subject to possibility of reverter. The earlier, March 18, 1937, was the date of the amendment of Article 17 to declare free of tax estates subject to possibility of reverter. The later, February 11, 1939, was the effective date of the Revenue Act of 1939, section 811, which changed the wording of section 302 of the Revenue Act of 1926, and occasioned an announcement by the Treasury Department that all regulations in conflict with the new act were abrogated. T.D. 4884, 4885.

■ Despite this unquestionable primary purpose of Congress to give relief to those who had relied on those favorable provisions of the Treasury Regulations dealing with possibilities of reverter, my conclusion is that Congress intended not only to make applicable those favorable provisions but all the rest of the Regulations as well. The same moral principle which would entitle an estate to relief because the decedent had relied on an incorrect but favorable provision of the Regulations would require an estate to take the burden where the decedent had acted in the face of an incorrect and unfavorable provision of the same regulations. I hold, therefore, that Article 20(b) (3) of Regulations 80 (1937 ed.) determines that the decedent's power to reduce or cancel the unborn children's interests in this case existed on the date of his death and therefore required that the fund subject to that power be included in the gross estate.

Even if I am wrong in this holding that Article 20(b) (3), right or wrong, has been adopted by Congress for the purposes of such cases as this, its principle is in accord with the decided cases dealing with situations such as this and reliance on adoption by Congress is therefore unnecessary.

■ There can be no doubt that, had decedent's power here been unconditional, instead of contingent upon birth of issue, it would have resulted in taxation of the entire trust corpus. A power in the settlor to alter beneficial interests, even among a limited group, is sufficient to require taxation. Guggenheim v. Helvering, 2 Cir., 117 F.2d 469, 476.

In the case at bar, even before the birth of issue, it was within the decedent's power to cancel the interests of possible issue and thus assure the enjoyment of the estate by his sister and brother or their issue immediately upon his death. This power, being thus something of value to them, was of value to him. It was not made valueless by the contingency that there might never be any issue and that, accordingly, the sister and brother or their issue would take immediately upon the decedent's death without any help from the exercise of the power to cancel.

■ The courts have consistently held that the fact that a right or power retained by a decedent was conditional must be disregarded in determining whether the corpus, over which the conditional right or power was retained, should be included in the decedent's gross estate for estate tax purposes. If the right or power retained results in taxability when unconditional, it requires taxation even though contingent. Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604 (contingent reversionary interest); Goldstone v. United States, 2 Cir., 144 F.2d 373 (contingent possibility of reverter to decedent's estate); Fidelity-Philadelphia Trust Co. v. Rothensies, 324 U.S. 108, 65 S.Ct. 508, 89 L.Ed. 782 (contingent power of appointment); Chase Nat. Bank of City of N. Y. v. Hickey, D.C.N.D.N.Y., 4 P-H 1942 Fed. Tax Serv. par. 62,947 (contingent power to change beneficiary).

Plaintiff refers me to two decisions which appear to stand for the proposition that a contingent interest does not result in taxability where the contingency has not occurred prior to the decedent's death. Estate of Ballard, 47 B.T.A. 784; Mary Tetzlaff, 1 T.C.M. 461, affirmed, Helvering v. Tetzlaff, 8 Cir., 141 F.2d 8. If and to the extent that these decisions are inconsistent with the authorities above cited, I do not regard them as controlling.

Thus, on the authority of the decided cases, as well as upon the authority of Article 20(b) (3) of the Regulations, I hold that the fund subject to the power to reduce or cancel was properly included in the decedent's gross estate.

Plaintiff's motion for summary judgment denied. Defendant's motion for summary judgment granted.